IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**HELEN PEPPER**                                                                                 **PLAINTIFF**

**V.**                                         **CAUSE NO. 3:10-CV-00162-CWR-LRA**

**CITY OF JACKSON, MISSISSIPPI,
OFFICER BRIAN CARVER, SERGEANT
JEFFREY MYERS, AND OFFICER KIMERA**           **DEFENDANTS**
**BOYKINS, IN THEIR OFFICIAL AND
INDIVIDUAL CAPACITIES**

## MEMORANDUM OPINION AND ORDER

The above-styled cause is before the Court on the defendants' motions for summary judgment. The Court has considered the parties' briefs, the evidence in support thereof, and the arguments offered at the hearing on this matter on March 31, 2011, and concludes that the motions of the City of Jackson, Myers, and Boykins should be granted, as should that of Carver in his official capacity. However, the motion of Carver in his individual capacity should be granted in part and denied in part.

## FACTS[1]

Helen Pepper is a City of Jackson employee. On February 19, 2008, Pepper drove her car into the driveway of her home in Jackson. She was immediately followed by Officer Brian Carver of the Jackson Police Department. Carver drew his sidearm and handcuffed Pepper. Several other officers arrived at the scene shortly thereafter, including Officer Kimera Boykins

---

[1] Because the case at bar is before the Court on the defendants' motions for summary judgment, the Court must view the facts in the light most favorable to Pepper's claims. Therefore, to the extent that the parties submit competing accounts of relevant events, the Court accepts Pepper's version as true. *Grainger v. Meritan, Inc.*, 2011 WL 824484, *3 (S.D. Miss. 2011).

and Sergeant Jeffrey Myers. Ultimately, Pepper was cited for a handful of offenses and released on her own recognizance.

Pepper contends that Carver followed her home without turning on his blue lights, Excerpts of Helen Pepper Deposition [Docket No. 43-6] at 17, and as she entered her driveway, "Carver had whooped up in my driveway and rushed me at gunpoint and was hollering and screaming at the top of his voice." Pepper Excerpts [Docket No. 43-6] at 4. According to Pepper, Carver told her that her "tag [wa]s improperly displayed," and although she denied that characterization, she conceded to Carver that her license-plate decal had expired. Pepper Excerpts [Docket No. 43-6] at 5. Pepper claims that Carver began a pat-down search wherein she "was subjected to . . . Carver crudely placing his hands on [her] body in a lewd and inappropriate manner." Complaint at 3.

In time, other police officers arrived. According to Pepper, Myers appeared and "unlawfully searched [Pepper's] vehicle and opened the door to [Pepper's] home." Complaint at 3. Pepper testified that she later told Myers that Carver "ha[d] choked me and called me a black bitch while I'm sitting here handcuffed and I've done nothing." Pepper Excerpts [Docket No. 43-6] at 8.

In time, Officer Kimera Boykins was dispatched to the scene to continue the pat-down search begun by Carver because Department policy requires that searches be conducted by officers of the same gender. According to Pepper, Boykins "felt [Pepper's] breasts in a lewd manner." Complaint at 3. Pepper also contends that Boykins "proceeded to pull [Pepper]'s pants down below her knees, humiliating [Pepper], as . . . Boykins did this while in [Pepper]'s driveway." Complaint at 3.

Ultimately, as the officers prepared to release her at the behest of the assistant chief of police, Pepper claims that Carver removed her handcuffs and "took my arm and just snatched it up behind me and pulling as hard as he could." Pepper Excerpts [Docket No. 43-6] at 10.

Carver's description of these incidents is markedly different in tone, but with respect to the claims before the Court, his account is substantially identical to Pepper's. Carver claims that on February 19, 2008, he saw Pepper pass through an intersection with an expired license-plate decal. Excerpts of Brian Carver Deposition [Docket No. 36-1] at 3. Carver testified that Pepper failed to yield to both his blue lights and his siren and that he continued to follow her. Carver Excerpts at 3. When Pepper pulled into her driveway, Carver claims that Pepper immediately exited her vehicle "rather rapidly," and so he stepped out of his squad car and drew his firearm. Carver Excerpts at 4.

Carver conceded to having "physically forced [Pepper] onto the car," Carver Excerpts at 5, but he specifically denies having touched her in any manner resembling a frisk. Carver denies having touched Pepper's breasts, Carver Excerpts at 5, and claims that he continually had to instruct her to keep her hands on the car because Pepper "was walking away from [Carver] the entire time." Carver Excerpts at 5.

According to Carver, Pepper "resisted," and at some point, she removed her jacket and threw it on top of a box. Carver claims that Pepper "obeyed no commands." Carver Excerpts at 6. Nevertheless, Carver insists that he did not "violently grab[ ] and handcuff[ ] Mrs. Pepper," and he claims not to have seen any cuts or other injuries attributable to the handcuffs. Carver Excerpts at 7.

Carver concedes to having "shoved [Pepper] into the backseat" because of her resistence.

Carver Excerpts at 7. However, Carver denies having choked Pepper, having "snatch[ed] her arm," and having called Pepper a "black bitch." Carver Excerpts at 8.

Ultimately, Pepper was found guilty in a local court of improperly displaying her car tag. Pepper Excerpts at 26.

After the two parted ways, Carver and Pepper met again at Pepper's home under unfriendly circumstances on December 4, 2008. Likewise, the facts of this encounter are not in dispute. In her Complaint, Pepper alleges that "Carver confronted, intimidated, and unjustly harassed" her and "subsequently instituted false charges against" her. Complaint at 3-4. Specifically, Carver drove by Pepper's house and observed her car idling in her driveway with no one near the car. Carver cited Pepper for violating Section 63-3-909 of the Mississippi Code by leaving an automobile "unattended without first stopping the engine[.]" Excerpts of Helen Pepper Deposition [Docket No. 40] at 2-3; Excerpts of Brian Carver Deposition [Docket No. 36-1] at 2. In short order, Pepper emerged from her home to dispute the ticket, and she continues to dispute the legal applicability of the statute to her act of leaving her car idling in her driveway. Pepper Excerpts [Docket No. 40] at 15.

On February 18, 2010, Pepper filed suit in Hinds County Circuit Court against Carver and others under Title 42, Section 1983 of the United States Code, alleging that their encounters "deprived her of rights, privileges and immunities guaranteed her by the United States Constitution in that she did not commit the offenses or which she was arrested, detained, charged, and prosecuted." Complaint at 5. Pepper seeks compensatory and punitive damages "that will compensate [her] for the violation and deprivation of her constitutional and statutory rights as a result of the false arrest, malicious prosecution, negligence, gross negligence and

4

intentional infliction of emotional distress." Complaint at 5-6. Carver and his co-defendants removed the case to federal court on March 15, 2010.

On January 31, 2011, Carver filed a Motion for Summary Judgment [Docket No. 36]. The City of Jackson [Docket No. 43], Boykins [Docket No. 44], and Myers [Docket No. 45] similarly moved on February 4, 2011. The Court convened a hearing on these motions on March 31, 2011, at which time Pepper abandoned all claims, save allegations of unconstitutional excessive force during the February 2008 incident and unlawful arrest from the December 2008 episode.

## STANDARD OF REVIEW

Although motions for summary judgment are filed frequently, not every case is suitable for such disposition. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When confronted with these motions, this Court focuses on "genuine" issues of "material" facts. An issue is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgement, together with an inference in such party's favor that the evidence allows would be sufficient to support a verdict in favor of the party." *Zisman v. Mason*, 2008 WL 879726, *3 (S.D. Miss. 2008) (citing *Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A fact is material if it is one which might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Factual disputes that are irrelevant or unnecessary will not be considered. *Id*. Likewise, unsubstantiated assertions are not competent summary judgment evidence. *Forsyth v. Barr*, 19

F.3d 1527, 1537 (5th Cir. 1994).

The jury has the responsibility to assess the probative value of the evidence. As a consequence, a court must step back and refrain from making credibility determinations, and it must not weigh evidence or draw from the facts legitimate inferences for the movant. *Strong v. Dept. of Army*, 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005). This Court is ever mindful that although a useful device, summary judgment "must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 865 F.2d 1235, 1241 (5th Cir. 1989); *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991).

## ANALYSIS

**Municipal Liability.** Under Section 1983, municipalities cannot "be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978). In other words, a municipality will not suffer liability under Section 1983 pursuant to a traditional theory of *respondeat superior*. *Id.* However, a municipality that directly violates a constitutional right through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" can be held liable under Section 1983. *Id.* at 690.

Moreover, as a matter of pleading, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). Pepper has made no such allegation; her Complaint does not identify any particular policy or custom, and her allegations contain no specific facts tying any City policy to the events of February 2008 or December 2008. Moreover, Pepper made no attempt to put forth any evidence

of such a policy, custom, or practice.

Therefore, the City of Jackson is entitled to judgment as a matter of law.

**Official Liability.** Similarly, the defendant police officers cannot be held liable in their official capacities.

A municipal officer can be held liable under Section 1983, but "[s]ince official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," *Monell*, 436 U.S. at 690 n.55 (1978), a plaintiff to such a suit must demonstrate the existence of an official policy, custom, or practice that led to the alleged constitutional tort. *See id.* at 691. Because Pepper has made no effort to demonstrate the existence of such a policy in the case at bar, she is not entitled to pursue relief against Myers, Boykins, and Carver in their official capacities.

**Individual Liability.** These conclusions leave only the issues of the defendant police officers' individual liabilities, to which each raises the shield of qualified immunity against Pepper's allegations.

"Qualified immunity . . . shields government officials performing discretionary functions from individual liability for civil damages but only insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Morgan v. Swanson*, 627 F.3d 170, 175 (5th Cir. 2010) (rehearing *en banc* granted, *Morgan v. Swanson*, 628 F.3d 705 (5th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Fifth Circuit applies a burden-shifting analysis to invocations of qualified immunity against Section 1983 claims. "Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has

the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010) (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)). *See also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Therefore, a full evaluation of any assertion of qualified immunity against a Section 1983 claim requires two inquiries: first, whether the plaintiff has "alleged the violation of a clearly established right," and second, whether the defendant's "actions [were] objectively reasonable in light of clearly established law at the time of the conduct in question." *Gros v. City Grand Prairie, Tex.*, 34 Fed. Appx. 150, *9 (5th Cir. 2002) (*citing Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

In the case at bar, Pepper has failed to demonstrate that Carver, Boykins, and Myers acted unreasonably in a manner amounting to unconstitutionally excessive force, and therefore, the individual defendants' actions during the February 2008 incident fall squarely within the legal protections afforded by this principal. At the March 31 hearing, Pepper specifically abandoned all claims against Carver related to the February 2008 incident except for having drawn down on her with his sidearm – an act which, in Pepper's view, amounted to excessive force. But even viewed in the light most favorably to Pepper's case, Carver's actions – particularly considering that they followed a pursuit of a suspect – do not smack of unreasonableness. Likewise, even permitting all reasonable inferences in Pepper's favor, the allegations against Boykins – that she required Pepper to pull her pants down below her knees during a search incident to arrest, *see* Exhibit F to City of Jackson's Motion for Summary Judgment [Docket No. 43-6] at 34 – do not paint a picture of unreasonable behavior. And

8

similarly, Pepper's claims against Myers – that he searched her car following the arrest and tested the doorknob on her front door – simply do not illustrate unreasonably excessive force. These matters might have caused Pepper a degree of embarrassment, but because Pepper has raised no claims implicating state law, the only question before the Court is whether the incidents of which she complains rise amount to violations of the Constitution.

The allegations regarding the December 2008 incident, though, present a different situation altogether.

Clearly, even taken in the light most favorable to Pepper's case, the evidence regarding that episode clearly does not implicate Myers and Boykins. But the allegations focusing on Carver present a different scenario altogether. Carver contends that after he viewed Pepper's car idling in her driveway with no driver present, he cited her for a violation of Section 63-3-909 of the Mississippi Code, which reads:

> No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition and removing the key, and when standing upon any perceptible grade, without effectively setting the brake thereon and turning the front wheels to the curb or side of the highway.

Carver argued at the March 31 hearing that this requirement applies with full force even on private property. But that position is undercut by Section 63-3-5 of the Mississippi Code, which reads: "The provisions of this chapter relating to the operation of vehicles refer exclusively to the operation of vehicles upon *highways* except: (1) Where a different place is specifically referred to in a given section; (2) The provisions of Articles 9 and 25 shall apply upon highways and elsewhere throughout the state." Neither of Section 63-3-5's exceptions apply to Pepper's conduct; a private driveway is not a highway. *See* Miss. Code Ann. § 63-3-

125(e).[2] The parties agree that Pepper's car, idling and unattended though it was, rested in her private driveway. Therefore, Carver did not have probable cause to execute an arrest pursuant to Section 63-3-909.[3]

"[A] qualified immunity defense cannot succeed where it is obvious that a reasonably competent officer would find no probable cause." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). In the case at bar, Carver cited[4] Pepper for a crime that does not exist, and in the light most favorable to Pepper's claim, this amounts to unreasonable behavior. "The constitutional claim of false arrest requires a showing of no probable cause," *Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009), and Pepper has made such a showing. Undoubtedly, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quotation omitted). And, just as certainly, police conduct is judged by the measuring stick of an objectively reasonable officer, and courts do not require law enforcement agents to act with the legal acumen of an attorney. *See Burns v. Reed*, 500 U.S. 478, 495 (1991). But where the conduct under scrutiny is so commonplace as the act of warming up a car on a cold December day, and where the statute

---

[2] Notably, the title for this chapter is commonly referred to as the "Rules of the Road." *See* Miss. Code Ann. § 63-3-1.

[3] Of course, a jury may receive evidence casting doubt on Carver's testimony concerning the reason behind his presence in Pepper's neighborhood and regarding the illicit motive *vel non* behind the decision to issue Pepper's citation.

[4] Obviously, even when viewed in the light most favorable to Pepper's claim, Pepper's December 2008 encounter with Carver did not culminate in a traditional arrest. However, under the Fourth Amendment, handcuffs and mugshots are not the only calling cards of seizures. "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). Viewing Pepper's evidence in the light most favorable to her claim, the record at the very least leaves unanswered a genuine issue as to whether Carver's actions amounted to a seizure.

presumed to preclude such conduct clearly has no proper application, arrest is plainly unreasonable. Viewed in the light most favorable to Pepper's case, the evidence surrounding the December 2008 incident supports a claim under Section 1983 for an unlawful arrest, and Carver is not entitled to qualified immunity therefrom.

The damages stemming from that alleged violation, though, are another matter. Although Pepper claims in her Complaint that the defendants' actions resulted in "loss of enjoyment of life, mental anguish, emotional distress, loss of earnings," and other damages, at this stage she has offered no proof of such injuries. "[A]n award of damages cannot stand when the evidence to support it is speculative or purely conjectural." *Masinter v. Tenneco Oil Co.*, 929 F.2d 191, 194 (5th Cir. 1991). Therefore, although Pepper has offered proof sufficient to proceed to trial on her Section 1983 claim for an unlawful arrest occurring in December 2008, the jury may be left with very little to consider in assessing an appropriate award beyond nominal damages.

## CONCLUSION

The City of Jackson's Motion for Summary Judgment [Docket No. 43] is granted. Kimera Boykins' Motion for Summary Judgment [Docket No. 44] is granted. Jeffrey Myers' Motion for Summary Judgment [Docket No. 45] is granted.

To the extent that Brian Carver's Motion for Summary Judgment [Docket No. 36] seeks judgment as a matter of law on Pepper's claim that Carver, in his individual capacity, executed an unlawful arrest at the December 2008 incident, his motion is denied. In all other respects, Carver's motion is granted.

SO ORDERED this Eighteenth day of April 2011.

                                                /s/ *Carlton W. Reeves*

                                                Hon. Carlton W. Reeves
                                                United States District Court Judge